**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

\*\*\*

THE UNITED STATES OF AMERICA,

           Plaintiff,

vs.

BRET ALAN HUMPHRIES,

           Defendant.

Case No. 2:14–cr–279–APG–VCF

**REPORT AND RECOMMENDATION**

Before the court are the Government's supplemental briefing (ECF No. 104), Humphries's response (ECF No. 107), and the Government's reply (ECF No. 108). For the reasons stated below, the court finds that the Government's witness, S.M., is not credible. This court's original recommendation remains the same. Humphries's motion to suppress should be granted.

**I. Background**

On July 7, 2015, this court held an evidentiary hearing on Humphries's motion to suppress. (ECF No. 51) At the hearing, two Las Vegas Metropolitan police officers testified about the night Humphries was arrested. Detective Vicente Ramirez interrogated Humphries that night. (ECF No. 54 at 22) He testified that Humphries had confessed to downloading and viewing child pornography on his home computers. (*Id.* at 38) He also testified that he had *Mirandized* Humphries before eliciting the confession. (*Id.* at 39) The officer however did not record his alleged recitation of the *Miranda* warnings. (*Id.* at 40) Nor did the officer's recording indicate that he had previously read Humphries's his *Miranda* rights. (*Id.*) Humphries also did not sign a *Miranda* rights waiver form. (*Id.*)

Humphries, his wife, and his stepdaughter also testified. Humphries testified that Detective Ramirez escorted him to a back room. (*Id.* at 93) When they arrived at the room, Humphries asked

about his *Miranda* rights.  The detective informed him that he was not entitled to any *Miranda* warnings as he was not under arrest.  (*Id.* at 94)  Humphries also testified that Detective Ramirez did not administer any *Miranda* warnings before eliciting his confession.

This court decided that Humphries was in custody when he was escorted to the back room.  (ECF No. 67)  Detective Ramirez was therefore required to administer *Miranda* warnings.  (*Id.*)  After considering the testimony of Detective Ramirez and Humphries, this court concluded that Humphries's version of events was more credible.  (*Id.*)  This court therefore recommended granting Humphries's motion to suppress.  The district judge adopted the recommendation and suppressed Humphries's confession.

On March 1, 2016, approximately one month after the district judge adopted the recommendation, the Government moved for reconsideration.  (ECF No. 77)  The Government had recently secured the testimony of witness S.M.  (*Id.*)  S.M. was housed with Humphries at the Pahrump detention center.  (*Id.*)  S.M. allegedly spoke with Humphries on numerous occasions during their stay in Pahrump.  On one occasion, shortly after this court issued its recommendation, Humphries purportedly bragged to S.M. that he had "made the interviewing officer look like a liar and he fooled the magistrate judge into throwing out his confession."  (ECF No. 78 at 9)  The district judge referred the motion for reconsideration with instructions to hold an evidentiary hearing regarding Humphries's statements to S.M.  The evidentiary hearing was limited in scope to whether Humphries lied during the original evidentiary hearing.

On June 30, 2016, this court held the supplemental evidentiary hearing. Both S.M. and Humphries testified about their interactions and the content of their conversations.  (ECF No. 99)

/// /// ///

/// /// ///

## II. Discussion

S.M. is a convicted felon, and is currently awaiting sentencing on federal conspiracy charges in the Northern District of California. (*Id.* at 7) He also expects, but was not promised, a benefit at his upcoming sentencing in exchange for testifying in this prosecution. (*Id.* at 8) The Government points to three categories of information and alleges that, taken together, these considerations demonstrate that S.M. is more credible than Humphries.

1. <u>Motivation to Testify</u>

S.M. acknowledged that he would only receive a benefit if his testimony was truthful. (*Id.* at 9) The Government argues that this is an important factor bearing on S.M.'s credibility. S.M. had everything to lose and nothing to gain by lying. (ECF No. 104) Humphries asserts that the reality is not quite so simple. He alleges that S.M. is self-interested and only provided facts that supported the Government's case. (ECF No. 107) S.M.'s motivations are uncertain.

S.M. could be, as the Government contends, abiding by the Government's conditioning benefits on truthful testimony. It is equally likely however that S.M. is, as Humphries asserts, a skilled manipulator, who hopes that his misleading testimony will be accepted as fact. As neither party developed the testimony regarding S.M.'s reason for deciding to testify against Humphries, this court is unable to determine which portrayal of S.M. is accurate. (*Id.* at 7-10) (establishing the basic fact that S.M. would only receive a benefit if he told the truth). To the extent either party relies on S.M.'s motivation for testifying, this factor is neutral.

2. <u>Demeanor</u>

According to the Government, S.M. was a "polite and respectful" witness. (ECF No. 104) S.M. fully and truthfully answered counsel's questions and took this court's corrective instructions in stride. (*Id.*) In contrast, Humphries was "agitated and angry." At one point, he allegedly contradicted himself

3

by calling S.M. a "son of a bitch" in one breath, then immediately saying he had "already forgiven [S.M.] for what he's trying to do here." (*Id.* at 6)  Humphries argues that S.M.'s demeanor is consistent with that of well-practiced liar. (ECF No. 107)  In contrast, Humphries's responses were spontaneous and genuine.

There is an innocuous explanation for Humphries's allegedly aggressive behavior.  Humphries admits he is hard of hearing. (ECF No. 107)  The examining prosecutor acknowledged she spoke quickly. (ECF No. 99 at 68)  On several points during his testimony, Humphries asked the prosecutor to repeat her question. (*Id.* at 75, 76, 80)  It is understandable that Humphries would lean forward and rise in his seat in an attempt hear the prosecutor's question.  And if Humphries is hard of hearing, he would necessarily be as tone deaf to his own voice as he would to other sounds.  Based on these observations, this court credits Humphries's explanation for his demeanor.

The Government also commented on Humphries apparently sudden change of heart.  Humphries called S.M. a "son of a bitch," but then said he had already forgiven S.M. for testifying against him.  The Government assigns an ill motive to Humphries's alleged contradiction: he caught himself in a lie and was attempting to cover it up. (ECF No. 104)  This court believes that the reality is far less sinister.  Approximately two months elapsed between the emergence of S.M.'s testimony and the supplemental evidentiary hearing. (ECF No. 87); (ECF No. 92)  Humphries likely felt a whirlwind of emotions during this time.  Anger and frustration could easily have given way to acceptance and the knowledge that he would need to testify again.  It is conceivable that Humphries could hate S.M. for fabricating testimony, but understand and forgive his self-interested actions.

S.M. and Humphries displayed two different demeanors when they testified.  S.M. was polished and prepared, while Humphries was spontaneous and reactive.  Neither demeanor is inherently more credible than the other.  This factor is therefore neutral.

3.     <u>Knowledge of Specific Details</u>

S.M. knew details about Humphries's case.  He knew that police had searched Humphries's home, discovered child pornography on Humphries's computer, and elicited a confession from Humphries.  (ECF No. 99 at 18-21)  He also knew that this court had recommended that Humphries's confession be suppressed, and that Humphries's was awaiting a decision by the district judge on the recommendation.  (*Id.* at 29).

According to the Government, S.M. could not have known this information unless it came directly from Humphries.  (ECF No. 104)  Humphries testified that he stopped "hanging out" with S.M. in February 2015, the same time Humphries discovered S.M. was a "snitch."  (ECF No. 99 at 78-79).  Humphries must be lying about cutting off contact with S.M.: how else would S.M. have known about events that occurred after February 2015.  (ECF No. 104)

The Government construes Humphries's testimony too narrowly.  Humphries testified, "[a]fter [discovering S.M. was a snitch], of course I talked to him because you try not to alienate people inside the pod.  It doesn't mean that I hung out with him, that I went over there and started conversations with him."  (ECF No. 99 at 79)  Humphries reiterated, "I didn't stop talking to him because you can't not talk to somebody who is one bunk over from … you."  (*Id.* at 81)  It is likely that Humphries's continued to discuss his case, in vague generalities, with S.M. so as to not arouse suspicion in his pod.  This explains why S.M. was able to recount a general synopsis of what Humphries told him, but was unable to recall specific details about their conversations.  (*Id.* at 47)  S.M.'s testimony, which largely consisted of general summaries of what Humphries allegedly said, detracts from his credibility.

/// /// ///

/// /// ///

/// /// ///

4. <u>Inconsistencies Between S.M's Letters and His Testimony</u>

      a. *S.M.'s Shifting Testimony*

It appears that S.M.'s testimony changed between his initial letters and his live testimony at the evidentiary hearing. In his letters, S.M. stated that Humphries said he "fooled" the magistrate judge. The letters never stated that Humphries said he lied to the magistrate judge. At the evidentiary hearing, S.M. testified, "[h]e [Humphries] lied to the judge and the judge chose to believe him over the officer and that made him even more happy." (ECF No. 99 at 27) If Humphries had said he lied to this court, either directly to S.M. or to other prisoners, such a statement should have been precisely and faithfully recounted in S.M.'s letters. S.M's failure to mention Humphries's purported lying in his letters detracts from S.M.'s credibility.

      b. *Absence of Direct Quotes Regarding Humphries's Alleged Lies*

In one exchange, the prosecutor asks S.M. to recall the exact words Humphries used to describe his allegedly fabricated testimony. S.M. was unable to recall the details of this crucial conversation. (ECF No. 99 at 27)("I wouldn't want to say I remember the exact words or not.") S.M. also testified that he "didn't know what was important or what wasn't," so he made quick notes of his entire conversations and later formatted them into letters. (*Id.* at 53)

If Humphries had bragged about lying to this court, it would be expected that S.M. would pick up on this crucial detail. One would also expect that Humphries's lying would feature prominently in S.M. letters. Even if S.M. were unsure what facts would be relevant to the Government's position, he must have known Humphries's alleged admission that he lied to a federal judge would be of particular interest to the Government.

In his letters, S.M. wrote out summaries of his conversations. (ECF No. 78) Immediately after S.M. wrote that Humphries bragged about fooling the magistrate judge, he provided a direct quote from

Humphries: "Sure, I admitted doing it but they can't use that now and so what I was logged on with my password, they need to prove I was sitting there, I don't have to prove I wasn't, if they reduce it to a misdemeanor I will change my plea."  (*Id.*)  S.M. directly quoted Humphries on this occasion, but did not include a direct quote with regard to Humphries's alleged deceit.

The absence of a direct quote helps this court to conclude that Humphries never made any statement about lying to this court or fooling a magistrate judge.  It is highly unlikely that Humphries, who knew that S.M. and other individuals in his pod were informants, would have made any statements that could have been remotely construed as damaging to his case.

Based on this court's observation of Humphries over the course of two evidentiary hearings, I conclude that Humphries told the truth regarding his interactions with Detective Ramirez.

ACCORDINGLY, and for good cause shown,

IT IS HEREBY FOUND that S.M. is not a credible witness.

IT IS FURTHER RECOMMENDED that even considering S.M.'s testimony, Humphries's motion to suppress (ECF No. 39) be GRANTED.

IT IS SO RECOMMENDED.

DATED this 4th day of October, 2016.

_____
CAM FERENBACH
UNITED STATES MAGISTRATE JUDGE